UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CASE NO.:

15TH JUDICIAL CIRCUIT
Court Case No.: 50-2020CA005507XXXXMB

WILLIAM DAMELIO,
       Plaintiff,
v.

TARGET CORPORATION and ROTO-
ROOTER SERVICES COMPANY,
       Defendants.
_____/

## DEFENDANT, TARGET CORPORATION'S, NOTICE OF REMOVAL WITH INCORPORATED MEMORANDUM OF LAW

Defendant/Petitioner TARGET CORPORATION ("TARGET"), by and through its undersigned counsel and pursuant to 28 U.S.C. §§1332, 1441, 1446, Fed. R. Civ. P. 81(c), respectfully petitions this Court for removal of the above-captioned action from the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida to the United States District Court for the Southern District of Florida, Palm Beach Division [Ex. 1: Civil Cover Sheet]. In support thereof, TARGET states as follows:

1. Plaintiff filed this state court action styled *William Damelio v. Target Corporation and Roto-Rooter Services Company*, Case No.: 50-2020CA005507 in the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, on May 19, 2020 alleging personal injuries as a result of fall "when he sat on a defective toilet in the men's restroom" at the Delray Beach Target store on September 20, 2018. TARGET was served with the Complaint on May 26, 2020. [Ex.2: Summons and Complaint directed to Target: See ¶4,5]

2. On June 5, 2020, TARGET filed its Answer and Affirmative Defenses to Plaintiff's Complaint. [Ex. 3: Target Answer]

3. On May 26, 2020, ROTO-ROOTER SERVICES COMPANY ("ROTO-ROOTER") was served with the Complaint. [Ex. 4: Return of Service as to Roto-Rooter]

4. On June 15, 2020, ROTO-ROOTER filed its Answer and Affirmative Defenses to Plaintiff's Complaint. [Ex. 5: Roto-Rooter Answer]. ROTO-ROOTER consents to removal of this case to Federal Court. [Ex. 6: Roto-Rooter consent to remove]

5. The Complaint does not allege the residence or citizenship of Plaintiff, WILLIAM DAMELIO ("DAMELIO"). However, public record from The Palm Beach County Property Appraiser confirms DAMELIO is a resident of Palm Beach County Florida and owns a home located at 796 Belle Grove Lane, West Palm Beach, FL 33411. DAMELIO purchased the home in January 2018 and qualifies for homestead exemptions. [Ex. 7: Plm. Bch. County Property Appraiser's Records]. Additionally, medical billing confirms mail is directed to DAMELIO at his Belle Grove address. [Ex. 8: Billing from Cobblestone Chiropractic identifying the "Mail To Address" as 796 Bell Grove Lane]. DAMELIO is a citizen of the State of Florida.

6. TARGET is a foreign corporation incorporated in Minnesota with its principle place of business in Minnesota. TARGET is a citizen of the state of Minnesota [Ex.9: Target Annual Report].

7. ROTO-ROOTER is a foreign corporation incorporated in Ohio with its principle place of business in Ohio. ROTO-ROOTER is a citizen of the state of Ohio [Ex. 10: Roto-Rooter Annual Report].

8. Count I of the Complaint asserts a "Negligence Claim Against Target" and seeks damages against TARGET. Count II asserts a "Negligence Claim Against Roto-Rooter" and seeks damages against ROTO-ROOTER. [Ex.2]

9. As to damages, the Complaint states as follows:

> WILLIAM DAMELIO suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of a previously existing condition. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future. [Ex.2: ¶12,19]

10. DAMELIO'S Complaint seeks damages in excess of Thirty Thousand Dollars ($30,000.00).

11. By correspondence dated May 7, 2019, DAMELIO'S counsel provided TARGET with a settlement demand package accompanied by over 150 pages of medical records and partial billing from some of the providers who have treated DAMELIO for the injuries he relates to the incident at Target. Voluminous medical records and billing attached to the demand include Central Palm Beach Surgery Center, Care Spot Urgent Care Center, Dr. Mammales of Cobblestone Chiropractic & Wellness, Dr. Bistline office notes, Interventional Pain Services of Palm Beach procedural notes, Spine and Orthopaedic Specialists of Central Florida (Dr. Smith, Dr. Katz, Dr. Baynham office notes), and diagnostic MRI reports of the lumbar spine, left shoulder, and left biceps tendon from The Imaging Centers.

12. The demand contains a thoughtful and thorough liability analysis and sets forth a detailed damage evaluation. The demand breaks down in detail TARGET'S "negligence" and highlights the magnitude of the event, the mechanism of injury, the extent of DAMELIO'S injuries, the significance of his pain, suffering, and limitations, the providers who treated him, and the medical care he has received to date. [Ex. 11: May 7, 2019 Demand Ltr.].

13. As to the magnitude of the event, the demand states as follows [Ex.11]:

> Please be advised that our client, William Damelio, sustained very serious, life-altering permanent injuries as a result of a slip and fall which occurred on or about 1:00 PM on September 20, 2018, at Target in Delray Beach, Florida. As you are or should be aware, our client slipped after sitting on a toilet, after the toilet broke off of the wall. As a result, our client sustained grievous and permanent injuries to his left side and lower back.

14. The "Liability" section of the demand provides an in-depth, thoughtful, and comprehensive evaluation, and describes the "heightened standard of care Target owed to DAMELIO" backed with supporting legal authorities and in typed bold face italicized font provides as follows [Ex.11]:

> Our theories of liability for the case at hand rest on the legal theories of negligence and premises liability. The heightened standard of care that Target woes to its business invitees was breached when it allowed the broken and hazardous toilet to be present for a sufficient amount of time as to cause the serious injuries and damages more fully detailed below. As a business inviter, Target owed duties to William to both keep its property in a reasonably safe condition and to warn her of any concealed dangers which Target should have known about. *See Owens v. Publix Supermarkets, Inc.*, 802 So.2d 315 (2001). These duties were breached when the Target property at issue was indeed not kept in a safe condition. **Notably, the provisions of Fla. Stat. 768.0755 are entirely inapplicable** *as the cause of William's fall was not a transient substance*. **As such, he is under no legal obligation to prove actual or constructive notice of the condition on the property owner's behalf**; rather, in the instant case the property owner has an affirmative duty to its business invitees to exercise reasonable care in the maintenance, inspection, repair, warning and/or mode of operation of its business premises. *See Owens , Markowitz v. Helen Homes of Kendall Corp.*, 826 So.2d 256 (2002), Fla. Stat. 768.0755 (2010). Target plainly breached these duties by failing to properly maintain and inspect the grounds of its property. Given the applicable law in this case, it is clear liability for the instant loss will fall upon Target. (*emphasis as in the Demand Letter*)

15. DAMELIO contends he sustained "grievous and permanent injuries to his left side and lower back." DAMELIO details his complaints along with the treatment received in his Demand as follows:

> Soon after our client fell onto the floor, continued pain and discomfort to William's left shoulder, left arm, and lower back, amongst other complaints, prompted our client to begin a regular course of physical therapy and medical care from which our client has yet to have been discharged. William's extensive injuries include but are not limited to: **L3/4 disc herniation with nerve root approximation; L4/5 disc herniation with nerve root impingement extending onto the L5 endplate; left shoulder AC joint fluid and edema; left shoulder supraspinatus tendon articular surface tear; left elbow joint effusion; left humerus perimysial edema of the pronator teres muscle; left shoulder pain; lower back pain; neck spasms; back spasms; thoracic segmental and somatic dysfunction; lumbar segmental dysfunction; pelvic segmental dysfunction; and facet joint syndrome**, for which

our client has <u>already undergone an L3-5 medial branch block; L4-S1 transforaminal epidural steroid injection; and a left shoulder PRP injection</u>, and for which further surgical intervention looks probable. As a result of the injuries and needed medical care our client's medical bills alone, which are in excess of **$39,012.00**, are likely to increase significantly into the future along with their general damages. [Ex.11 (*emphasis per the Demand Letter*)]

16.     The bold-face type highlights that DAMELIO'S injuries to his lumbar spine, neck, thoracic spine, left shoulder, left elbow, and pelvis and advises DAMELIO'S medical bills are in excess of $39,012.00.  Counsel affirms that this amount is expected to "increase significantly into the future along with DAMELIO'S general damages" presumably because DAMELIO'S "continued pain and discomfort" remains to date.  Based upon a detailed and thorough liability, medical, and damages analysis, supported by voluminous medical records and billing, DAMELIO'S counsel valued the claim "at $250,000.00."  Counsel references his firm's Tax ID and sets forth specific directions as to whom the settlement check "should be made payable to" as well as to the "office address and location" for delivery of the check.  Counsel's unambiguous and unequivocal demand directed to Target provides as follows:

> Given the severity of the injuries sustained, our client hereby demands **$250,000.00** in settlement of this matter, to be tendered by 3:00 PM May 21, 2019, to our office located at 925 S. Federal Highway, 6th Floor, Boca Raton, FL 33432.
> [Ex. 11: Demand Letter *(emphasis as provided)*]

17.     As part of the settlement demand package, Counsel produced voluminous medical records setting forth DAMELIO'S significant complaints and medical treatment as follows:

- On September 23, 2018, DAMELIO presented to Dr. Urbe for an urgent care evaluation for injuries due to a fall three days prior.  DAMELIO complained of pain to his left shoulder, left arm, and an exacerbation of lumbar pain due to his fall.  He received a Ketorolac injection and was provided a prescription for Meloxicam to manage his symptoms.
- On September 29, 2018, DAMELIO presented to Dr. Mammales D.C. with continued sharp pain to his left shoulder and low back which he contributed to his fall at Target.  The Ketorolac injection did not relieve his symptoms as he reported shoulder pain 9/10 and lumbar pain 7/10 in severity.  DAMELIO told Dr. Mammales that the pain interferes with his daily activities, is worse with any movement, and interrupts his sleep.  Dr.

- Mammales found DAMELIO'S prognosis to be "fair" provided that he "adheres to the prescribed treatment plan" consisting of therapeutic exercise, modalities, procedures, chiropractic adjustments, lumbar traction, electric muscle stimulation, heat therapy, massage/manual therapy. DAMIELO was advised to undergo treatment three times a week.
- DAMELIO underwent 42 therapeutic and chiropractic sessions with Dr. Mammales from September 29, 2018 through February 12, 2019. At his February 12, 2019 visit, DAMELIO complained of continued shoulder pain 5/10, left bicep pain 5/10, and worsening low back pain of 6/10. DAMELIO told Dr. Mammales his activities are significantly affected by his pain and symptoms. Treatment was to continue two times a week.
- An October 30, 2018 left shoulder MRI was positive for pathology which could relate to a labral injury. AC joint fluid and edema was observed in the distal clavicle consistent with contusion/stress reaction; supraspinatus tendinopathy with an articular surface partial tear was observed by reading radiologist Brian Young.
- An October 30, 2018 MRI of the lumbar spine revealed a L3/4 disc bulge impinging on the thecal sac and a L4/5 posterior disc herniation associated with an annular fissure/tear impinging upon the thecal sac and left L5 nerve root.
- A December 4, 2018 MRI of the left biceps tendon revealed tenosynovitis.
- As to the back, DAMELIO was evaluated and treated by neurosurgeon Dr. Smith on November 27, 2018 and December 18, 2018 for severe, intermittent, sharp radiating back pain 10/10 which he related to "a fall injury on September 20, 2018." DAMELIO was referred to pain management to undergo lumbar medial branch blocks. Dr. Smith further recommended an anterior lumbar interbody fusion surgery at L5/S1 to relieve his pain.
- On December 18, 2018, DAMELIO was evaluated by interventional pain management physician Dr. Bistline for sharp/stabbing, dull, aching, severe back pain 8-9/10. DAMELIO underwent bilateral medial branch nerve block injections at levels L3, L4, L5 with Dr. Bistline.
- As to the left shoulder and elbow, DAMELIO was evaluated and treated by orthopedic physician Dr. Katz on December 12, 2018, December 18, 2018, January 9, 2019, March 6, 2019, and March 19, 2019. DAMELIO complained of pain and weakness to his left shoulder, left biceps, and left elbow which exacerbated with overhead activity, heavy lifting, and carrying. MRIs were ordered; physical therapy and occupational therapy were recommended. DAMELIO was provided prescriptions for Mobic and Cyclobenzaprine to control and manage his symptoms. DAMELIO endured platelet rich plasma injections to his left shoulder.
- A January 3, 2019 MRI of the left upper extremity/elbow revealed tendinosis of the common extensor and flexor tendons and the distal biceps tendon.
- On February 7, 2019, DAMELIO underwent an orthopedic spine evaluation for pain to his neck, back, and left shoulder which occurred after a fall in the bathroom of a store on September 20, 2018. DAMELIO reported the toilet was "ripped out of the wall causing water to be on the floor." DAMELIO complained of left sided, dull, aching neck pain 8-9/10 in severity which radiated to his left shoulder and was associated with numbness and tingling. DAMELIO told Dr. Baynham his low back pain was sharp, aching, and 8-9/10 in severity. Based upon his examination and review of DAMELIO'S MRI imaging, Dr. Baynham recommended a trial of transforaminal L5/S1 epidural injections. Dr.

      Baynham's opined that DAMELIO would benefit from "an L5/S1 anterior lumbar interbody fusion surgery" as a "simple discectomy is unlikely to alleviate his symptoms."
- On March 14, 2019, DAMELIO underwent bilateral transforaminal epidural steroid injections at L4/5 with Dr. Baynham at Central Palm Beach Surgery Center.
  [Composite Ex.12: Significant Medical Records]

18. Medical billing from some (but not all) of DAMELIO'S providers was included with Counsel's demand package and includes the following charges to date:

| Provider | Charge |
| --- | --- |
| CareSpot Urgent Care (Dr. Uribe) | $   212.00 |
| Cobblestone (Dr. Mammales D.C.) | $18,300.00 |
| Interventional Pain Mgmt (Dr. Bistline) | $ 7,839.00 |
| Melborne Spine & Orthopedics of Central Fla. (Dr. Smith) | $ 1,486.00 |
| Spine & Orthopedic Specialists of S. Fla. (Dr. Katz, Dr. Baynham) | $10,020.00 |
| Central Palm Beach Surgery Center | Not Provided |
| The Imaging Center | $ 7,800.00 |
| **Partial Billing Totaling** | **$45,657.00** |

      [Composite Ex. 13: Partial Medical Bills]

19. Notwithstanding years of conservative treatment, including chiropractic care, therapeutic exercises, physical therapy, occupational therapy, prescription medications, diagnostic imaging, injections to his spine and left shoulder, DAMELIO did not obtain relief from his "continued pain and discomfort." Spinal surgery as a treatment option was recommended by two of DAMELIO'S physicians. Per the medical records, DAMELIO describes how the extent of his injuries affects his lifestyle and limits his activities all which DAMELIO relates to his fall at Target. The supporting medical records and billing which confirms DAMELIO has undergone further treatment with Dr. Mammales demonstrates that DAMELIO continues to "suffer from his serious, life altering, and permanent injuries."

20. In order to provide the Court with a baseline for evaluating whether more than $75,000.00 is in controversy, TARGET attaches the Affidavit of Undersigned Counsel. [Ex. 14]. As set forth therein, Undersigned has performed a search of verdicts in courts throughout the State

of Florida relating to injuries similar to those allegedly sustained by DAMELIO. Those include injuries to the back and left shoulder along with a future surgery recommendation. That search has revealed multiple verdicts which exceed $75,000.00. Based upon more than thirty-eight (38) years of experience as a trial attorney in South Florida and Undersigned's review of DAMELIO'S medical records produced to date, together with DAMELIO'S claims for bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of a previously existing condition all of which DAMELIO claims are permanent or continuing in nature and that he will suffer these losses in the future, the amount in controversy in this case clearly exceeds the $75,000.00 threshold necessary to invoke federal diversity jurisdiction [Ex. 14].

21. TARGET'S Notice of Removal has been filed within 30 days of receipt of the initial pleading in accordance with 28 U.S.C. §1446.

22. Venue is proper in the Palm Beach Division of this Court pursuant to 28 U.S.C. §1446 as the state court action originated in Palm Beach County.

23. Copies of all process, pleadings and other papers filed in the State Court proceedings have been filed with the Court as required by 28 U.S.C. §1446 (a). Copies of these documents are attached as composite Exhibit 15.

24. TARGET has filed the removal fee contemporaneously with its Removal Petition.

25. Pursuant to 28 U.S.C. §1446(d), TARGET has provided written notice of the removal of the State Court Action to DAMELIO'S counsel, counsel for ROTO-ROOTER, and has filed a Notice of Filing this Notice of Removal with the State Court. A true and correct copy of the Notice of Filing Target's Notice of Removal is attached hereto as Exhibit 16.

**MEMORANDUM OF LAW**

26. As a predicate for removal, a removing defendant must demonstrate that the district court has original jurisdiction of the action pending in state court. *Leonard v. Kern,* 651 F. Supp. 263 (S.D. Fla. 1986). The burden is on the party requesting removal to federal court to show that it has met all of the applicable statutory requirements. *Wright v. Continental Casualty Co.,* 456 F. Sup. 1075, (N.D. Fla. 1978). A defendant may introduce its own affidavits, declarations or other documentation to meet its burden. *Pretka v. Kolter City Plaza II,* 608 F. 3d 744 (11th Cir. 2010).

27. Based upon the removal evidence, including Counsel's $250,000.00 settlement demands supported by voluminous medical records and partial billing of "at least $45,657.00," DAMELIO'S claimed damages, and Undersigned's affidavit filed contemporaneously herewith, TARGET has met its burden and has fully complied with the statutory requirements for removal of this matter to Federal Court. Compete diversity of citizenship exists between DAMELIO (Florida), TARGET (Minnesota), and ROTO-ROOTER (Ohio) and the amount in controversy exceeds of $75,000.00. The Court possesses jurisdiction over this matter.

**The Amount in Controversy Exceeds $75,000.00**

28. DAMELIO alleges that TARGET and ROTO-ROOTER are responsible for his injuries and seeks damages arising from the September 20, 2018 incident. Per the May 17, 2019 settlement demand package, DAMELIO directed a demand requesting that TARGET **"tender a check for $250,000.00."** The demand is supported by over 150 pages of medical records which confirm the treatment DAMELIO has received for the injuries he relates to the incident at Target. The demand details the extent of DAMELIO'S claimed injuries, the physicians who have treated him and the medical care he has received to date. The demand highlights the magnitude and degree of DAMELIO'S pain and complaints for which spinal surgery has been recommended; future

medical care and treatment is likely as "DAMELIO continues with pain and discomfort." The demand further emphasizes that DAMELIO activities of daily living have been adversely affected due to the injuries which he relates to the incident at Target. DAMELIO'S unequivocal $250,000.00 settlement demand (directed solely to Target) constitutes legally certain evidence that he seeks damages in excess of $75,000.00. *Bowen v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 39433 (M.D. Fla. 2010).

29. The demand provides a reasonable and cogent liability analysis, a detailed description of the mechanics of DAMELIO'S fall, a thorough outline of DAMELIO'S injuries and the medical treatment he has received. Although pre-suit offers may not be determinative in and of themselves as to the amount in controversy, the detail of DAMELIO'S pre-suit demand unquestionably demonstrates that the claimed damages exceed the $75,000.00 threshold for diversity jurisdiction. *See Wilson v. Target*, 2010 U.S. Dist. LEXIS 96399 (S.D. Fla. 2010) *citing La Rocca v. Stahlheber*, 676 F.Supp. 2d 1347, 1349 (S.D. Fla. 2009).

30. Counsel's unambiguous and unequivocal $250,000.00 demand is supported with voluminous medical records and billing which demonstrates that Counsel and DAMELIO value this case in excess of $75,000.00. By contrast, if DAMELIO was seeking less than $75,000.00 in damages, he would have made that clear in his demand directed to TARGET.

31. Noteworthy, Counsel's settlement demand package confirms that both neurosurgeon Dr. Smith and orthopedic spine surgeon Dr. Baynham recommend a lumbar fusion surgery as a treatment option. Also significant, per Dr. Baynham, "a simple discectomy is unlikely to alleviate his symptoms." Although the surgery has yet to occur, it is reasonable to conclude that at a minimum, the recommendation and need for surgery substantiates DAMELIO'S claim for pain and suffering along with the likelihood the he will incur additional damages in the future.

*Farley v. Variety Wholesalers, Inc.*, 2013 U.S. Dist. LEXIS 57740 (M.D. Fla. 2014). Given the continuing nature of DAMELIO'S lumbar pain, coupled with the claim that he has obtained no relief through conservative measures and that he still continues to treat for his pain and symptoms, Counsel's assertion that surgery is a consideration for the next step in treatment is fair and reasonable; as such, DAMELIO'S future damages must be taken into consideration in evaluating the amount in controversy herein. *See: Farley.*

32. DAMELIO'S Complaint seeks damages for bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of a previously existing condition. DAMELIO contends his injuries are permanent or continuing in nature and that he will suffer additional losses in the future. [Ex. 2].

33. Settlement offers that provide specific information to support a plaintiff's claim for damages suggests that the plaintiff is offering a reasonable assessment of the value of his claim. *Mullen v. GE*, 2013 U.S. Dist. LEXIS 196976 (M.D. Fla. 2013). In *Mullen*, Judge Howard observed that "for purposes of jurisdiction, what is actually recoverable is irrelevant; instead, it is the amount Plaintiff is seeking, and therefore putting in controversy, that is determinative. The plaintiff's likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiff is ultimately likely to recover." *Mullen*, quoting *Pretka, supra and Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009).

34. In *Bowen v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 39433 (M.D. Fla. 2010), Bowen filed her state court complaint against State Farm seeking damages in excess of $15,000.00 for injuries she sustained in a motor vehicle collision. State Farm timely removed

the case to Federal Court relying upon counsel's written demand letter demanding $100,000.00; Judge Fawsett denied Bowmen's remand motion and held that State Farm met its burden of establishing by a preponderance of the evidence the amount in controversy was in excess of $75,000.00. Bowen's demand letter stated unequivocally, '[it] is our opinion that a reasonable settlement value for Vicki Bowen's claim for bodily injuries, impairments, damages, and losses is well in excess of the policy limits [$100,000] for which we hereby make demand." Judge Fawsett affirmed that Plaintiff's unequivocal demand with a specific dollar amount is sufficient to constitute "legally certain evidence that Plaintiff seeks damages in excess of $75,000.00." *Bowen*. Based upon the unequivocal $100,000.00 demand and the allegations contained in Bowen's Complaint (including claims for pain and suffering, mental anguish, and loss of capacity for the enjoyment of life), Judge Fawsett held that State Farm met its jurisdictional burden to establish that the amount in controversy was in excess of $75,000.00.

35. As in *Bowen*, Counsel's unequivocal demand seeking $250,000.00 to resolve this matter constitutes "legally certain evidence that Plaintiff seeks damages in excess of $75,000.00." *Id.* Additionally, Counsel advises that DAMELIO'S treating physicians have recommended spinal surgery as a treatment option. The Complaint seeks to recover damages for bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of a previously existing condition. The Complaint alleges DAMELIO'S injuries are permanent and continuing in nature and that he will suffer such losses and impairments in the future. [Ex. 2].

36. In *Mangano v. Garden Fresh Restaurant Corp.*, 2015 WL 5953346 (M.D. Fla. 2015), Mangano filed her "run-of-the-mill" slip and fall case in state court. Mangano's husband also brought a separate loss of consortium claim. Both claims asserted damages in excess of

$15,000.00. Although medical expenses were in excess of $190,000.00, Medicare paid only $39,289.00 to resolve Mangano's medical expenses in full. In finding that the amount in controversy was satisfied, Judge Steele stated as follows:

> Mrs. Mangano's medical bills are not the only source of damages claimed by Plaintiffs. Mr. Mangano has brought his own loss of consortium claim in which he alleges damages in excess of $15,000. As a result, Plaintiffs necessarily concede that the amount in controversy is at least $54,289 ($39,289 + $15,000) plus any damages Mrs. Mangano intends to seek in addition to recovering her medical expenses. It is entirely plausible that she will reasonably seek pain and suffering and other general damages in excess of $20,171.

32. As in *Mangano*, DAMELIO'S medical bills are not the only source of his claimed damages. The Complaints also seeks damages, *inter alia,* for pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life all of which is detailed in the Complaint and Counsel's demand. DAMELIO "necessarily concedes" the amount in controversy is at least the sum of her identified medical bills $45,657.00. Additionally, DAMELIO seeks damages from ROTO-ROOTER for his alleged injuries. As in *Mangano*, DAMELIO'S general damages clearly exceed $29,343.00.

33. Based upon on all of the foregoing, the amount in controversy in this matter is clearly in excess of the jurisdictional threshold limit of $75,000.00.

34. A removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010). A removing defendant need only show that the amount in controversy more likely than not exceeds the jurisdictional requirement. *Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2010). Based on the foregoing, removal of this matter is proper; TARGET has demonstrated by a preponderance of the evidence, that the amount in controversy herein exceeds the jurisdictional requirement set forth in 28 U.S.C. §1332.

## CONCLUSION

35. This action is removable to federal court pursuant to 28 U.S.C. §1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds the $75,000.00 threshold for federal jurisdiction. DAMELIO is a Florida citizen, TARGET is a Minnesota corporation, and ROTO-ROOTER an Ohio corporation. Diversity jurisdiction exists pursuant to 28 U.S.C. §1332, as there is complete diversity between DAMELIO, TARGET, and ROTO-ROOTER. *Strawbridge v. Curtis*, 7 U.S. 267 (1806).

WHEREFORE, Defendant/Petitioner, TARGET CORPRATION, respectfully requests this action, which is currently pending in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, be removed to this Honorable Court, that this Court assume full jurisdiction over the cause herein as provided by law, and that the Court grant further relief which is deemed just and appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of June, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

DERREVERE STEVENS BLACK & COZAD
2005 Vista Parkway, Suite 210
West Palm Beach, Florida 33411
Telephone: (561) 684-3222
Facsimile: (561) 640-3050
Email: jdd@derreverelaw.com
       eservice@derreverelaw.com
       cprasad@derreverelaw.com

BY: ___s/Jon D. Derrevere_____
JON D. DERREVERE, ESQUIRE
Florida Bar No: 0330132

## SERVICE LIST

**WILLIAM DAMELIO versus Target Corporation and Roto-Rooter Services Company**

**United States District Court, Southern District of Florida**

Jon D. Derrevere, Esquire
E-mail: jdd@derreverelaw.com
Derrevere Stevens Black & Cozad
2005 Vista Parkway, Suite 210
West Palm Beach, FL 33411
Phone: (561) 684-3222
Facsimile: (561) 640-3050
*Attorney for Defendant,*
*Target Corporation*

Hubert McGinley, Esquire
E-mail: hmcginley@schwedlawfirm.com
Schwed, Adams & McGinley, P.A.
7111 Fairway Drive, Suite 105
Palm Beach Gardens, FL 33418
Phone: (561) 694-6079
Facsimile: (561) 694-6089
*Attorney for Plaintiff,*
*Sara Avakian*